

# NUMBER 13-09-204-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

PETROLEUM SOLUTIONS, INC,                                    **Appellant,**

**v.**

BILL HEAD D/B/A BILL HEAD ENTERPRISES
AND TITEFLEX CORPORATION,                                    **Appellees.**

---

## On appeal from the 398th District Court
## of Hidalgo County, Texas.

---

# DISSENTING MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Vela
### Dissenting Memorandum Opinion by Justice Vela

I respectfully dissent because I do not believe the death penalty sanctions issued

by the trial court were warranted. In *Transamerican Natural Gas Corp. v. Powell*, 811

S.W.2d 913 (Tex. 1991), the supreme court set forth the standard governing the

imposition of sanctions. The court indicated that there must be a direct relationship

between the offensive conduct and the sanction imposed, and the sanction imposed should not be excessive. *Id.* at 917. A sanction must be no more severe than necessary to satisfy its legitimate purpose and trial courts must consider the availability of less stringent sanctions and whether such sanctions would fully promote compliance. *Id.* A sanction order striking an affirmative defense is tested according to the same standards, under *Transamerican,* as the striking of any other pleading*. See Lanfear v. Blackmon*, 827 S.W.2d 87, 91 (Tex. App.–Corpus Christi 1992, orig. proceeding); *see also In re Fina Oil and Chem. Co.*, No. 13-98-640-CV, 1999 WL 33589153 at * 12 (Tex. App.–Corpus Christi, Mar. 11, 1999, orig. proceeding) (not designated for publication).

The sanctions meted out in this case included striking most of PSI's claims and all of its affirmative defenses. The evidence offered at trial was that Barron took the flex connector back to his office. In February 2002, Neally, an attorney, came to pick it up. Barron testified the last time he saw it was when he loaded it in to Neally's vehicle. Neally engaged the services of David Hendrix, an engineering expert, to review and inspect the flex connector. Hendrix admitted receiving a flex hose connector in early 2002. He left it with a laboratory to store. More than four years later, Head discovered that the underground storage system was leaking and, more than four years later, sued PSI. PSI's attorneys asked for the return of the flex connector. Both Hendrix and PSI's attorneys looked for the flex connector, but could not find it. Even Titeflex, the manufacturer of the underground flex connector, acknowledged in its brief it "has never contended that misplacement of the flex connector was deliberate or intentional . . . ."

Under *Transamerican,* PSI's failure to locate the flex connector must have some

2

relationship to the trial court's action of striking all of PSI's affirmative defenses. This Court, in *Fina Oil*, opined that that "conduct during discovery has no direct link to the merits of [defendant's] affirmative defenses that the relevant limitations period expired . . . ." *See In re Fina*, 1999 WL 33589153 at *13. Even though requested to make findings, the trial court did not articulate what connection there was between the alleged discovery abuse and the striking of the affirmative defense. And the majority opinion does not articulate one, either.

The majority also disregarded PSI's argument that it should not be punished because it was its expert who lost the connector. Under the circumstances presented here, there is no evidence that PSI had anything to do with the failure of the expert to locate the connector more than four years later. There is also no support for the proposition that PSI deliberately misplaced the connector.

Death penalty sanctions should be only severe enough to satisfy the legitimate purpose of granting such sanctions. Courts are required to consider the availability of less stringent sanctions. Here, the majority opinion does not even suggest that lesser sanctions were imposed first. The trial court also gave no explanation with respect to the sanctions it did impose. The supreme court has indicated that the record should contain some explanation of the appropriateness of the sanctions imposed. *See Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 883 (Tex. 2003). Discovery sanctions that are so severe that they inhibit the presentation of the merits of the case should be reserved for a party who has callously disregarded the responsibilities of discovery under the rules. *Id.* Here, PSI was prohibited from properly raising its affirmative defenses, such as limitations,

3

which, if proven meritorious, would have prevented Head's recovery on any issue. While PSI's answer was not struck, PSI was absolutely precluded from presenting the merits of dispositive defenses. The majority's conclusion that the trial court could have granted greater sanctions does not lessen the reality that PSI went to trial defenseless. In sum, the evidence outlined in the majority opinion does not explain conduct that would warrant the imposition of death penalty sanctions.

At the very least, this case should be remanded to the trial court to allow the jury to decide the case based upon PSI's defenses, in addition to the claims pleaded by the plaintiff.


ROSE VELA
Justice


Delivered and filed the
29th day of April, 2011.

4